IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ALEXANDER BODDIE, JR., )
)
Plaintiff, )
)
v. ) 1:08CV923
)
CORPORAL GATTA, )
OFFICER T.J. BOWMAN, )
)
Defendants. )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on Defendants' motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (Docket Entry 19.) Plaintiff Alexander Boddie, Jr. opposes the motion. (Docket Entry 24.) For the following reasons, it is recommended that the Court grant Defendants' motion for summary judgment.

## I. PROCEDURAL BACKGROUND

On December 22, 2008, Plaintiff filed this action against Defendants, Corporal Tina Gatta[1] (now Tina Smith Hill) in her official capacity as a U.S. Corporal of Stokes County Jail and Officer T.J. Bowman in his official capacity as a U.S. Detention Officer of Stokes County Jail, for violating his civil rights under 42 U.S.C. § 1983, alleging cruel and unusual punishment. (Docket Entry 1.) On January 22, 2009, Plaintiff amended his complaint. (Docket Entry 3.) On January 18, 2012, the appropriate summonses were issued to

---

[1] The Plaintiff sued "Corporal M. Gatta," and the Defendants have admitted that "Corporal Gatta" is Corporal Tina Gatta. (Def. Answer at 2, Sec. IV (B), Docket Entry 17.) Tina Gatta's name is now Tina Smith Hill. (Hill Aff. ¶ 2.) In this Recommendation the court will refer to her as "Corporal Gatta."

Defendants.[2] (Docket Entry 14.) On February 15, 2012, Defendants filed their answer. (Docket Entry 17.) On October 31, 2013, all discovery was to be closed. (Docket Entry 18.) On November 28, 2012, Defendants filed the motion currently before the Court. (Docket Entry 19.)

## II. FACTUAL BACKGROUND

On a motion for summary judgment, this Court views the evidence in the light most favorable to Plaintiff, the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

A. <u>Plaintiff's allegations</u>

On the date of the alleged incident, February 13, 2006, Plaintiff was a federal pre-trial detainee awaiting sentencing in the Stokes County Jail. (Am. Compl. at 6; Hill Aff. ¶ 4; Bowman Aff. ¶ 4.) Plaintiff alleges that immediately after breakfast on the day in question Corporal Gatta, Officer T.J. Bowman, and two other unknown officers approached his cell with riot shields. (Am. Compl. at 5, Docket Entry 3.) Plaintiff claims Corporal Gatta then advised, "If you throw anything on me or my staff you will be charged." (*Id.*) Plaintiff replied, "I don't have anything to throw." (*Id.*) Corporal Gatta then told Plaintiff, "Put your hands through the tray slot." (*Id.*) Plaintiff alleges he then held his hands palms up in surrender and inquired, "What's going on?" (*Id.*) Plaintiff then claims Corporal Gatta pepper sprayed him instantly and states this is cruel and unusual punishment. (*Id.*) Plaintiff also alleges the officers were unable to find weapons in his cell. (*Id.*)

---

[2] The lapse in time occurred because Plaintiff was awaiting *in forma pauperis* status from the Court. Eventually Plaintiff was given *forma pauperis* status on June 9, 2011. (*See* Docket Entry 11.)

2

After the pepper spray incident, Plaintiff alleges that Officer T.J. Bowman and another unknown officer roughly escorted Plaintiff to the segregation housing area to the shower stall. (Am. Compl. at 6, Docket Entry 3.) Plaintiff then alleges that he was trying to avoid the water spray because the officers would not let him take off his clothes to shower. (*Id.*) Plaintiff claims that because he was trying to resist the water spray that Officer T.J. Bowman kept pushing Plaintiff on his neck from behind and that they ignored his screams and pleas for them to stop. (*Id.*) After three attempts to get Plaintiff under the water, the officers left Plaintiff in the shower area. (*Id.*) After this incident, Officer Adkins went to Plaintiff to prepare a pepper spray report and at this point Plaintiff claimed he was suffering from neck pain. (*Id.*) After this report was taken, a nurse examined Plaintiff's neck, identified the swelling, and gave Plaintiff Ibuprofen. (*Id.*)

Following this incident, on the same day, Plaintiff was transferred to Guilford County Jail in High Point, North Carolina. (*Id.*) Plaintiff claims at this location that X-rays were taken and regular medication for pain was prescribed. (*Id.*) Plaintiff was later transferred to Orange County, North Carolina and continued to submit numerous complaints of pain and for which he was prescribed more medicine. (*Id.*) After Plaintiff was sentenced, he was sent to the Federal Correctional Institution in Atlanta, where more X-rays were taken and Ibuprofen was given for pain. *Id.* Plaintiff claims he is still experiencing limited movement, numbness on his left side, and regular pain in his neck lasting for hours at a time. *Id.*

<u>Officers' reports, logs, and affidavits</u>

Officer Bowman reported that he had a previous incident with Plaintiff because of combative and threatening behavior. (Bowman Aff. Ex. A.) Additionally, Plaintiff told

3

Officer Bowman and other officers that they would require riot gear to deal with him. (*Id.*) On February 12, 2006, Corporal Gatta was informed by Officer Henry "Throcky" Throckmorton that inmates had reported that Plaintiff was threatening to throw urine on them while they ate breakfast the next morning. (Hill Aff. ¶ 5; Ex. A.) Subsequently, on February 13, 2006, at around 6:20 a.m., Corporal Gatta saw Plaintiff on a closed-circuit camera throwing cups of water from the toilet out of his cell onto other prisoners during breakfast. (Hill. Aff. ¶ 6.) After witnessing this behavior Corporal Gatta went to Plaintiff's cell and told him to stop throwing water on the officers or she would charge him with assault. (Hill Aff. ¶ 6; Ex. A.) About five minutes after Plaintiff was advised to stop throwing water, he again threw water on other inmates while they ate breakfast below the Plaintiff's cell. (Hill Aff. ¶ 6 and Ex. A; T.J. Bowman Aff. ¶ 5.)

At this point, Corporal Gatta decided to move Plaintiff to another cell. (Hill Aff. ¶ 6.) After she went to his cell to inform Plaintiff that he would be moved due to his behavior, he cursed at Corporal Gatta and said he would not leave the cell block. (*Id.*) Corporal Gatta then met with other officers, including Bowman, and made plans to escort the Plaintiff from his cell via handcuffs to another cell away from the other inmates. (Hill Aff. ¶ 7; Bowman Aff. ¶ 5.) The officers wanted to handcuff Plaintiff for safety reasons. (Hill Aff. ¶ 8.)

At 6:38 a.m., Corporal Gatta along with Officers Bowman, Throckmorton, and Corporal White went to Plaintiff's cell to move him. (Hill Aff. ¶ 8; Bowman Aff. ¶ 8.) Corporal Gatta then asked Plaintiff several times to put his hands through the food slot to handcuff him, but Plaintiff refused to do so. (*Id.*)

4

After Plaintiff repeatedly refused to comply with orders, Corporal Gatta sprayed two short bursts of pepper spray onto Plaintiff's forehead. (*Id.*) The Stoke's County Sheriff's policy at the time allowed officers to use pepper-spray to gain control of unruly or combative inmates or those that refused to follow orders to submit to officers' control. (*Id.*) After Plaintiff was pepper-sprayed, Corporal Gatta asked Plaintiff again to put his hands through the food slot to be handcuffed and Plaintiff complied, allowing Officer Bowman to handcuff him. (Hill Aff. ¶ 8; Bowman Aff. ¶ 9.) While transferring Plaintiff to the new cell the officers did not use any force except that needed to control Plaintiff's movements during the transfer, and they did not hold him tightly, but Plaintiff spit in the face of one officer and threatened Corporal Gatta and another officer. (Hill Aff. ¶ 9; Bowman Aff. ¶ 9.)

Adhering to the Sheriff's policy (requiring officers to wash a person after he or she had been pepper-sprayed), Corporal Gatta instructed Officer Bowman and another officer to take Plaintiff to the shower in his new cell. (Hill Aff. ¶ 10; Bowman Aff. ¶ 10.) Corporal Gatta witnessed Plaintiff continue to be combative and struggling with officers as they took him to the shower; thus eventually Corporal Gatta instructed the officers to just leave Plaintiff to wash himself off. (*Id.*)

After the officers left the cell, Corporal Gatta asked Plaintiff to put his hands through the food slot to remove his handcuffs and he refused. (*Id.*) Within a few minutes Corporal Gatta and six other police officers entered the cell and removed the handcuffs without force. (*Id.*) Corporal Gatta then had Officer Sue Adkins go back to Plaintiff's cell and fill out a questionnaire to make sure he was okay following the use of the pepper-spray. (Hill Aff. ¶ 10.) Officer Adkins reported that Plaintiff was fine and without complaints. (Hill Aff. ¶ 11.)

Plaintiff was transferred to the Guilford County Jail at 2:30 p.m. that same day, February 13, 2006, and never returned to the Stokes County Jail. (Hill Aff. ¶ 12; Bowman Aff. ¶ 11.)

## III. DISCUSSION

A. <u>Standard of Review</u>

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, dissenting). When making the summary judgment determination, the Court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving

6

Case 1:08-cv-00923-JAB-JLW   Document 25   Filed 06/25/13   Page 6 of 12

party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Id.* "The non-moving party cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008) (internal quotation omitted). Moreover, the non-movant's proof must meet the substantive evidentiary standard of proof that would apply at a trial on the merits. *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993), *modified on other grounds, Stokes v. Westinghouse Savannah River Co.*, 420, 429-30 (4th Cir. 2000); *DeLeon v. St. Joseph Hosp., Inc.*, 871 F.2d 1229, 1233 n.7 (4th Cir. 1989). Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996).

The Court cannot make credibility determinations or weigh the evidence, but the Court should examine uncontradicted and unimpeached evidence offered by the moving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). However, the evidence submitted to the Court must be similar to that which could be credibly admitted at trial. *Guseh v. N.C. Cent. Univ. ex rel. The Bd. of Governors of the Univ. of N.C.*, 423 F. Supp. 2d 550, 557 (M.D.N.C. 2005) (holding "Plaintiff must come forward with admissible evidence

7

that is more than self-serving opinions or speculation") (citing *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998)). To deny Defendants' motion for summary judgment the Plaintiff must prove there is a sufficient factual basis for needing a trial to settle genuine disputes of operative fact in regards to his claim of cruel and unusual punishment. (Fed. R. Civ. P. 56(c).)

Plaintiff as a federal pre-trial detainee is not subject to punishment at this time, thus the analysis is not under the Eighth Amendment; but under the Fourteenth Amendment analysis. *Capers v. Durham Cnty. Sheriff Dep't*, No. 1:07CV825, 2009 WL 798924, at *7 (M.D.N.C. Mar. 23, 2009) (quoting *Riley v. Dorton*, 115 F.3d 1159, 1166-67 (4th Cir. 1997)). Although the analysis is subject to a different Amendment, the inquiry remains the same under the 14th Amendment; "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, *or* maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). "'Even if there is a genuine issue of material fact as to whether Defendants behaved maliciously or sadistically after the need for force has subsided,'" Plaintiff must also demonstrate that the injuries were "more than *de minimis*" or that "the force used [is] of a sort repugnant to the conscience of mankind . . . or the pain itself [is] such that it can properly be said to constitute more than *de minimis* injury." *Carr v. Deeds*, 453 F.3d 593, 605-06 (4th Cir. 2006) (quoting *Norman v. Taylor*, 25 F.3d 1259, 1263 n. 4 (4th Cir. 1994)). "Furthermore, 'de minimis uses of physical force' are necessarily excluded from the Eighth Amendment's prohibition of cruel and unusual punishment,

8

unless the use of force is 'of a sort "repugnant to the conscience of mankind."' *Capers*, 2009 WL 798924, at *8 (internal quotation marks and citations omitted).[3]

B. <u>Analysis</u>

Plaintiff alleges that being pepper-sprayed by Corporal Gatta and showered by Officer Bowman to wash the pepper-spray off constituted cruel and unusual punishment in violation of 42 U.S.C. § 1983. (Am. Compl. at 5-6.) However, the Defendants claim the alleged incident was to contain and control an unruly prisoner and thus allege Plaintiff does not meet the prima facie case requirements necessary to constitute a cruel and unusual punishment claim.[4] (Hill Aff. ¶ 8; Bowman Aff. ¶ 8.) Hence, Defendants filed a motion for summary judgment (Docket Entry 19), arguing that there is no genuine issue of material fact and that Defendants are entitled to judgment as a matter of law. Plaintiff does not submit any additional evidence in opposition, other that the evidence already submitted in the record. Therefore, it is clear based on Defendants' additional evidence and the lack of evidentiary support submitted by Plaintiff that there is not a "genuine issue of material fact" that would warrant sending this case to trial.

1) <u>Cruel and unusual punishment for a pretrial detainee</u>

Plaintiff at the time of this complaint was considered a pre-trial detainee and thus subject to the protections of the Fourteenth Amendment. *Capers*, 2009 WL 798924, at *7. A claim for cruel and unusual punishment under the Fourteenth Amendment raises the core

---

[3] *See also Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996) (holding that prison officials may use appropriate force to quell prison disturbances, and an inmate must demonstrate that officials applied force maliciously and sadistically for the very purpose of causing harm).
[4] Defendants' also contend qualified immunity would apply if excessive force was found, however, because Plaintiff's prima facie case fails the Court does not need to provide analysis to this particular issue.

9

judicial inquiry of "whether force was applied in a good-faith effort to maintain or restore discipline, *or* maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. Additional to the core judicial inquiry the Court also considers whether the alleged injuries are more than *de minimis* to give rise to a cruel and unusual punishment claim. *Carr*, 453 F.3d at 605-06 (quoting *Norman*, 25 F.3d at 1263 n. 4).

The key inquiry regarding Plaintiff's claim is whether being pepper-sprayed and physically forced into the shower was an acceptable use of force by the officers. The Court takes into consideration the surrounding factors for the use of force to deem whether or not it was applied in a good-faith effort to control the prisoner, or if it was malicious and/or sadistic action taken against the prisoner. *Capers*, 2009 WL 798924, at *8. In a motion for summary judgment, the burden of proof lies on the movant to supply sufficient evidence to allege an affirmative defense or show the non-movant has not made a prima facie case. *Celotex*, 477 U.S. at 331 (Brennan, dissenting). Defendants offer evidence not only in credible affidavits deemed not self-serving, but also in jail logs and reports which indicate Plaintiff was behaving in an unruly and disruptive manner against jail personnel and other prisoners, thus requiring the need for some force to contain and control him. (*See* Hill Aff.; Ex. A; and Bowman Aff.) However, Plaintiff alleges in his complaint there was no reason for Defendants to subject him to this force. (Am. Compl. at 5-6, Docket Entry 3.) Consequently, it would appear the differing allegations from Plaintiff and Defendants could raise a genuine dispute of material fact between the parties; however, when evaluating a motion for summary judgment the purpose is to pierce past the pleadings and thus they cannot be solely relied upon for the purposes of defeating a summary judgment motion.

*Baber*, 977 F.2d at 874-75. Therefore, Plaintiff's opposition (Docket Entry 24) to this summary judgment motion, in which Plaintiff solely relies on his Complaint, is insufficient to meet the burden required to show the Court a reason for which this case should still proceed to trial. *Matsushita Elec.*, 475 U.S. at 587.

Plaintiff within his complaint only offers an affidavit style account to support his claims of excessive force and medical records showing his claims of pain. (Am. Compl. at 5-7, 9-27.) Plaintiff's affidavit style account of his claims is deemed "self-serving," which does not pass muster for the purposes of providing sufficient evidence needed to defeat a summary judgment motion. *Guseh v. N.C. Cent. Univ. ex rel. Bd. of Governors of the Univ. of N.C.*, 423 F. Supp. 2d 550, 557 (M.D.N.C. 2005) (holding "Plaintiff must come forward with admissible evidence that is more than self-serving opinions or speculation") (citing *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998)).

Further, even viewing the medical records submitted by Plaintiff in the light most favorable to him only continues to support Defendants' contention that only the amount of force necessary to control the Plaintiff was used, as Plaintiff has only *de minimis* injuries, which by law ordinarily do not give rise to a cruel and unusual punishment claim. *Capers*, 2009 WL 798924, at *8-9; *see also Carr*, 453 F.3d at 605-06 (holding that excessive force is "the sort [of force] repugnant to the conscience of mankind").

Hence, it appears Defendants have supplied evidence to satisfy the burden of proof to show that there is no genuine issue of material fact. Plaintiff has failed to establish a claim for excessive force.

## IV. CONCLUSION

In viewing the record as a whole in the light most favorable to the Plaintiff, he has failed to demonstrate a genuine issue of material fact that requires this case to go to trial. Accordingly, the Court finds that summary judgment is appropriate.

For the reasons stated herein, **IT IS RECOMMENDED** that Defendants' motion for summary judgment (Docket Entry 19) be **GRANTED**.

_____
Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
June 25, 2013